ELVAN ALLEN, Jr., Respondent, *vs.* SARAH E. CLAYBROOK, *et al.*, Appellants.

1. *Will—Fund left in trust to wife and children—Land purchased with—Title of wife in.*—A will directed the executor to secure a certain fund "for the benefit of Jane Allen and her children, and not to be subject to the control of her present husband." The fund was afterward invested by trustee in certain lands which were conveyed by him to "said Jane Allen and her children to their only proper use, benefit and behoof forever, etc." *Held,* that under the will and deed, Mrs. Allen had no power to dispose of the property, and hence took no absolute and exclusive title to the land, but merely an estate in common with her children; and that she could convey nothing more than her undivided share.

2. *Wills—Children described in as a class, etc.*—Where in a will, children are designated as a class, without further description, the general rule is that it will include all who answer the description at the time the will took effect.

*Appeal from Adair Circuit Court.*

*DeFrance & Halliburton,* for Appellants.

I. The deed of Jane Allen to Mrs. Claybrook conveyed the entire land involved in this suit. The doctrine held in 2 Redf. Wills, [1st. Ed.,] pp. 380–381, § 6, is, that a gift to one and the "issue" or children, etc. etc., is an absolute gift to the person named, and that the words "issue," etc. etc., were to be construed as words of limitation and not a purchase. (See also *Id.,* pp. 360, 363, 384–385.)

II. A bequest of the residue of an estate is to be regarded as personalty. (Durour vs. Motteaux, 1 Ves., 320–1.) The trust being money, the fact that it was invested in land while Mrs. Allen was a *feme covert,* by the trustee, does not prevent the land being treated as money. The donation was money, and was only hampered for the purpose of preventing her husband wasting it.

*Ellison & Ellison,* for Respondent.

I. The deed from Gatewood, trustee, to Jane Allen and her children, made them tenants in common of the land described therein. (2 Washb., 275 ; 53 Mo., 334.) Hence, Jane Allen could not convey the exclusive and entire title to the land.

VORIES, Judge, delivered the opinion of the court.

This was an action of ejectment, brought for the recovery of the possession of one undivided eighth part of the east half of the south-west fourth and the south-east quarter of section thirty-two, and the west half of the south-west quarter of section thirty-four, all in township sixty-four and range seventeen, in Adair county, Missouri.

The petition is in the usual form. The answer of the defendants first denies the facts stated in the petition, and then by way of special defense, sets up title in the defendant, Sarah E. Claybrook, and as to one quarter section of the land the defendant relied on the statute of limitations. The plaintiff replied, putting in issue the new matter set up in the answer.

The facts of the case as they appear in the bill of exceptions are about as follows : Both parties claim the land in controversy under the will of one Jane Menx, who died in the State of Kentucky. The clause of the will under which the parties claim, and the only clause in the will which could affect the rights of the parties is as follows :

" Item 11. It is my will that after defraying the above mentioned bequests and appropriations, if there be any of my estate remaining, that my executors secure the one-half thereof, by trust or otherwise, for the benefit of my niece, Mrs. Jane Allen, daughter of my sister Gatewood, (who is said to be in destitute circumstances) and her children, and not to be subject to the control of her present husband."

The plaintiff and the defendant, Sarah E. Claybrook, who is the wife of her co-defendant, are children of Mrs. Jane Allen, the niece named in the will. It is admitted that Jane Allen died long before the commencement of this suit.

After the execution of the will by Mrs. Menx she died. A trustee was appointed to receive and hold the bequest named in the clause of the will before set forth, in trust for said Jane Allen and her children. After the appointment of the trustee, the executor of the estate of Jane Menx, under the provision of the will aforesaid, paid over to Richard Gate-

wood, (the trustee) the sum of $1,200. After Gatewood had received this sum of money to hold for the use of the said Jane Allen and her children, he came to the State of Missouri, and with said money entered about eight hundred acres of land from the United States, and procured the title thereto in his own name, which said land so entered included the land now in controversy. After the lands had been entered by Gatewood on the third day of October, 1852, Gatewood, the trustee, executed a deed or instrument by which he recited or referred to his appointment as trustee, the receipt by him of the sum of $1,200, as such trustee; the investment of the money in the lands, (describing the lands,) and by which he conveyed and releases his title to the lands to the said Jane Allen and her children. The language used in the deed is, "to have and to hold said tract of lands with the appurtenances, unto the said Jane Allen and her children to their only proper use, benefit and behoof forever, * * * I relinquish all my right and title to the above lands. In testimony, etc."

Subsequent to the execution of this deed, Mrs. Jane Allen obtained a divorce from her husband, after which, for some years, she resided with her children, sometimes with the defendants, who were residing on a part of the lands now in controversy, where she died. Shortly before the death of Mrs. Jane Allen, on the 31st day of Oct., 1871, she, by deed of that date, conveyed to defendant, Sarah E. Claybrook, the lands described in the plaintiff's petition. The consideration named in the deed being two hundred dollars as well as services rendered to the grantor by the defendants. It is by virtue of this last deed that the defendants claim to hold the entirety of the title to the land in controversy, as well as by the statute of limitations as to 160 acres of the land. The defendants also offered in evidence a tax deed to the land; but it was only insisted on as a color of title in support of the plea of the statute of limitations.

The defendant, James E. Claybrook, also insists as a ground of defense to the action, as to one quarter section of the land

in controversy, that at and before the time that the lands were entered at the United States land office, he was residing upon, and had improvements on said quarter of land, and that he was entitled to enter the same under and by virtue of the laws of the United States; that the said Gatewood, (trustee) proposed to the defendant, James H. Claybrook, that if he would relinquish his pre-emption right to said land and permit said Gatewood to enter the same, that he, said Gatewood, would procure or cause the said quarter section of land to be conveyed to said defendant; that said defendant did, in pursuance of such request and proposition of Gatewood, relinquish his pre-emption right to said land and permit said Gatewood to enter the same as aforesaid; that after the land was so entered, Gatewood still promised to cause the land to be conveyed to the said defendant, and that the defendant had held the possession of said land under said agreement, claiming the same as his own, for more than ten years before the bringing of this suit. It was insisted, on the other hand, that defendant had relinquished his pre-emption to the land, in consideration that he should be permitted to remain on the land, and to cultivate the same without rent, until a division of the land should be made. Upon this question, the evidence was conflicting. The court excluded the deed from Jane Allen to Sarah E. Claybrook, purporting to convey the land in controversy to said defendant, Sarah E. Claybrook, because it was immaterial for the purpose of showing any title in the defendant to the interest claimed by plaintiff in the land. To the exclusion of this evidence, the defendants excepted. The court then admitted said deed in evidence, as showing color of title in support of the statute of limitations.

It was admitted by the parties that the plaintiff is one of the children of Jane Allen, and was in existence when the will of Jane Menx was made, and at her death; that Jane Allen had nine children in addition to the plaintiff, two of whom died before the death of their mother, without children, and that two died before the death of their mother, leaving

children; and that the father of Jane's children was still living. It was also agreed by the parties that the land was entered by Gatewood in December, 1849. At the close of the evidence the court of its own motion instructed the jury as follows:

" 1st.—If the jury find from the evidence, that the defendants were in possession of 160 acres of land at the time it was entered by Gatewood, and that Gatewood, prior to his entry, agreed with James H. Claybrook, that if he would consent to the entry of this land by Gatewood, he would hold it for him, and from that time continuously until the commencement of this suit, defendants continued in possession of that part they were occupying as aforesaid, and claiming the whole tract as their own land, adversely to Mrs. Allen and her children, the verdict of the jury as to that 160 acres should be for defendants."

" 2nd.—By continuous possession, is not meant that defendants should have lived on the premises continuously; but that they should have had an actual possession of this land, and not abandoned it with the purpose of yielding up the possession to whoever might choose to take."

" 3rd.—Although the jury may find from the evidence that defendants were in possession of said 160 acres at the time of the entry, claiming a pre-emption right to the same, yet, if they find that the agreement with Gatewood was, that Gatewood might enter the land, and that defendants should hold it free of rent until the land entered by Gatewood should be divided among the children of Mrs. Allen, or until the youngest child should attain its majority, and that defendants so held and possessed said land, then plaintiff is entitled to recover an undivided eighth of said land, and damages for the detention thereof."

" 4th.—The jury are further instructed that as to the other 160 acres, on defendant's own evidence, plaintiff is entitled to recover an undivided eighth."

" 6th.—If they find that defendant for ten years prior to the commencement of this suit was in the open, notorious

and adverse possession of a part of the 160 acres of land on which he had claimed a pre-emption, and that he was so claiming the whole of said 160 acres by agreement with Gatewood or Mrs. Allen for a deed to the same, they should find for the defendant, unless they find the patents for the land in question issued within ten years before the commencement of this suit."

"7th. The effect of the deed from Gatewood to Mrs. Allen and her children, was to make them tenants in common of the land conveyed, unless defendants then claimed the 160 acres of land, upon which they first settled, as their exclusive property, adversely to plaintiff and his mother and her other children, and were in the actual possession of a part thereof, claiming the whole under an agreement with Gatewood or Mrs. Allen, that they were to hold and occupy the same as their land exclusively. But such claim will not avail defendant if the patent for said land was issued ten years before the commencement of this suit. And if there was no such agreement with Gatewood, or Mrs. Allen, as that mentioned in the foregoing instruction ; yet, if at the time of the conveyance to Mrs. Allen and her children, defendants were in the open, actual possession of a part of said 160 acres of land, claiming it adversely to all persons, then the deed from Gatewood to Mrs. Allen did not have the effect to make defendants tenants in common with Mrs. Allen and her children, as to that part of the said 160 acres so actually in the possession of defendants, unless the patents issued ten years before the commencement of this suit.

The defendants objected severally to the foregoing instructions and their objections being overruled, they at the time excepted.

The court then gave a number of instructions at the instance of the plaintiff which were objected to by the defendants, but as no new or additional principle of law is involved in them, not contained in the instructions copied, they will not be further noticed.

Some seven or eight instructions were asked for by the defendant and refused by the court, yet all but the sixth were

9—VOL. LVIII.

based on the idea that the will of Mrs. Menx had the effect to vest the whole subject of the bequest in Mrs. Jane Claybrook, and were merely the converse of the instructions given by the court. They, therefore, need not be copied here.

The sixth instruction asked by the defendants and refused by the court was as follows :

" The jury are instructed that the presumption is that the patent issued within a year or two after the land was entered, and the burden of proof is on the plaintiff to show that it was not so issued."

The jury found a verdict for the plaintiff for one undivided eighth part of the land described in the petition, and judgment was rendered accordingly.

The defendants filed a motion for a new trial and in arrest of the judgment.

On the argument of the motion for a new trial, the plaintiff asked leave to remit part of the verdict, that is to say, to reduce the quantity of interest recovered in the land from one-eighth part thereof, to 11-90 thereof. The court permitted the plaintiff to remit as asked for, and rendered a judgment for 11-90 of the land named in the petition. To this action of the court the defendants excepted.

The defendants' motion for a new trial and their motion in arrest of judgment were then overruled by the court, and the defendants again excepted and appealed to this court.

The material question discussed by the parties to this suit, in this court, going to the merits of the controversy, grows out of the construction to be placed on the clause of the will of Jane Menx hereinbefore set forth, and the deed made by Gatewood to Jane Claybrook and her children The clause of the will referred to, in speaking of the residue of the estate of the testatrix, directs the executors of the will to "secure the one-half thereof by trust or otherwise, for the benefit of my niece, Mrs. Jane Allen, daughter of my sister Gatewood (who is said to be in destitute circumstances) and her children, and not to be subject to the control of her present husband."

It is contended by the defendants that this was a bequest for the benefit of Jane Allen, who took the entire estate or property and could dispose of the same absolutely, for the use of herself and children, as she pleased; that the children of Jane Allen took no present interest in the fund or property bequeathed; that the word "children," as used in the will, was only used for the purpose of showing that it was intended that Jane Allen should hold the property, as separate property for her and her children, free from the control of her husband.

It is true, that as a general rule where personal property is bequeathed to one who is invested with a power of disposition of the fund or property in a way that might result in a consumption of the property itself, it is construed to be an absolute gift. In the present case, however, the bequest is not placed under the control of Jane Allen. The fund is to be secured by trust, or otherwise, for the benefit of Jane Allen and her children, and it is to be held free from the control of Jane's present husband. Jane has no power of disposition of the property by any express terms, nor do we think any such power is to be implied. The language is just the same as it respects Jane and her children. We are referred to the case of English vs. Bechle, (32 Mo., 186,) as an authority in point in this case. That action, like this, was brought to recover an undivided interest in a lot of land. The plaintiffs claimed as representatives of one of the children of Marianne Belford. The lot had previously been conveyed to said Marianne who had afterwards conveyed the same and then died; and it was claimed by the plaintiffs that Marianne only had a life estate and could convey no more, and that by virtue of the conveyance of the lot to her, upon her death, the lot would vest in the plaintiffs or their grantors. The deed relied on in that case used this language "I sell, cede, relinquish, and transfer to the said Marianne Belford, by birth Guitarre, all the rights, titles, actions, claims and property which I have and can have in and to a lot (describing it) for the said Marianne and (*ainsique*) her heirs in di-

rect line, to have, manage and dispose of at her will and pleasure and as of property belonging to her, and so that the said lot above sold may not be pledged, obligated, aliened, incumbered and mortgaged to satisfy the engagements which Belford, the husband of the said Marianne, might enter into ; it being necessary that the said lot should always remain as the property of the children, the heirs of the said Marianne." It was held by the court that the wife took an estate in fee simple, and had full power to convey the lot absolutely ; that the deed having vested the title in the wife with full power to convey or dispose of the same as she pleased, gave her an absolute title, and that the expression at the end of the deed, " it being necessary that the said lot should always remain as the property of the children, the heirs of said Marianne," is only an explanation of the reason for the creation of a separate estate in the wife. The present case is not like the one referred to. In that case the lot was conveyed to Marianne and her heirs forever, with full power in her to dispose of the same at her pleasure, as her own property. But in the present case the property is secured in trust or otherwise for the use and benefit of Jane Allen and her children, and no power is attempted to be vested in Jane to dispose of the whole property any more than such power would be vested in the children. It seems to me that this case cannot be distinguished from the case of Hamilton vs. Pitcher, (53 Mo., 334). I, therefore, think that the children of Jane Allen took a vested interest in the bequest of Mrs. Menx at the time of her death. The children having been designated as a class, without further description, the general rule is that it will include all who answer to the description at the time the will took effect. (Jarm. Wills, 2nd. Vol. 54; Wigram Wills and O'Hara Const., 290.)

The two first instructions given to the jury by the court seem to fairly present the law growing out of the evidence in support of the plea of the statute of limitations as to one tract of the land in controversy. The third and fourth instructions improperly tell the jury that the plaintiff, if he recovers,

is entitled to recover one-eighth part of the land, when from the evidence it is admitted that the plaintiff was only entitled to 6-55 of the land. And again, it is difficult to see how the court arrived at the conclusion that plaintiff was not entitled to more than 11-90 of the land for which the judgment was rendered, after the motion was filed for a new trial, when the deed from Mrs. Allen to defendants had been excluded from the evidence. The court clearly erred in excluding the deed of Mrs. Allen to defendants. The deed was clearly admissible to show a conveyance of the land in dispute, of at least her undivided interest in the land in controversy.

The 7th instruction given to the jury by the court is clearly improper, and calculated to confuse or mislead the jury in reference to the issues made on the plea of the statute of limitations. By that instruction the jury are told, that the deed from Gatewood to Mrs. Allen and her children had the effect to make them tenants in common of the land conveyed, unless the defendants then claimed the 160 acres of land upon which they first settled as their exclusive property adversely, etc.; but such claim will not avail defendants if the patent for said land was issued ten years before the commencement of this suit. That part of the instruction is certainly improper and is certainly inconsistent with the latter part of the instruction which, in effect, tells the jury that the ten years time to constitute a bar did not begin to run until after the patent for the land had been issued. It may be that this instruction has been improperly copied by the clerks. We cannot, however, assume that it is wrongly copied.

For the reasons that the deed from Mrs. Allen to defendants was improperly excluded from the evidence, and the instructions were improper and defective in reference to the matters herein stated, and that the judgment is admitted to be for an improper amount of interest in the land, the judgment will be reversed and the cause remanded; the other judges concur.